KNAUBER, APPELLANT, *v.*
SMITH AND SCHNACKE ET AL.,
APPELLEES.

(No. C-860877—Decided
December 23, 1987.)

*Kelley, Grossheim & Bavely* and *E.
Ronald Grossheim,* for appellant.
*Taft, Stettinius & Hollister* and *G.
Jack Donson, Jr.,* for appellees.

HILDEBRANDT, J. In this appeal we are called upon to determine the pro-

priety of the summary judgment entered in the Court of Common Pleas of Hamilton County in favor of the defendants-appellees, Smith & Schnacke and Judson Hoy, hereinafter appellees.[1] For the reasons that follow, we affirm the judgment of the court below.

The record reveals that in the fall of 1982 the plaintiff-appellant, William T. Knauber (Knauber), became acquainted with Theresa Thaler (Thaler). In November 1982, Thaler began working in a pet store which Knauber owned. At first, Thaler worked only one day a week; however, by January 1983 she was working in the pet store six days a week without compensation.

In December 1982 or January 1983, Knauber and Thaler decided to pursue an investment in certain real estate. In January 1983, Knauber and Thaler purchased several condominiums at a total price of $314,500. The property was titled in the names of Thaler and Knauber as tenants in common.[2] Thaler contributed $190,000 toward the purchase price, the balance being financed by a loan from Harvest Home Savings & Loan (Harvest Home), a Cincinnati lending institution. It was further agreed that the in-

---

[1] Smith & Schnacke is a legal professional association under Ohio law for whom Judson Hoy, an attorney at law, is an employee and shareholder.

[2] Knauber maintained below that appellee Hoy advised Thaler that the property should be so titled.

come from the property would be used to pay the mortgage to Harvest Home and that any remainder would go solely to Knauber.[3] Also, during this period Knauber suggested to Thaler that they form a partnership. At Knauber's recommendation, they employed an attorney who had not previously represented either of them to draft the partnership agreement. Knauber and Thaler also established joint-and-survivorship checking and savings accounts at the Oakmont Savings & Loan in February 1983. They deposited the proceeds generated by the real estate investment in these accounts.

Knauber testified at his deposition that also in January 1983 Thaler advised him that she was going to prepare a codicil to her will whereby, in the even of her death, her interest in the real estate as well as the bank accounts would be bequeathed to Knauber.[4]

There is conflicting evidence in the record concerning whether Thaler informed Hoy of her intention to enter into a partnership with Knauber. Knauber testified that sometime prior to February 14, 1983, the date upon which Knauber and Thaler closed on the condominium property, Knauber overheard Thaler during a telephone conversation with Hoy. Knauber stated that Thaler informed Hoy of her intention to purchase the real estate with Knauber and that she wanted a codicil added to her will in order to effect the bequest to Knauber. At the end of that conversation, Thaler reported to Knauber that Hoy advised her that the property should be deeded to Thaler and Knauber as tenants in common.

Knauber further testified at his deposition that he overheard a second telephone call from Thaler to Hoy which occurred a few days subsequent to February 14, 1983. Knauber maintained that during that telephone conversation Thaler informed Hoy of her intention to form a partnership with Knauber.[5]

In the proceedings below, Hoy acknowledged having several telephone conversations with Thaler in February 1983 during which they discussed a codicil to her will which would bequeath the condominium real estate and bank accounts to Knauber. It is not disputed in the record that Hoy prepared the codicil and mailed it to Thaler on February 18, 1983. On February 22, 1983, Thaler personally acknowledged her signature on the codicil to Hoy in his office. The codicil provided:

"I, THERESA M. THALER, of Cincinnati, Ohio, being of full age and sound and disposing mind and memory, having made my Last Will and Testament on January 14, 1982, do now make, publish and declare this as and for a Codicil to my said Last Will and Testament as follows:

"I hereby add ITEM VII. A. as follows:

"ITEM VII. A. In the event I own any interest in real estate or funds on deposit as tenants in common or in joint and survivorship form, with William Thomas Knauber, at the time of my decease, I give, devise and be-

---

[3] During the appellees' deposition of Knauber, he testified that Thaler hoped to receive a depreciation-created federal income tax deduction as a result of the real estate investment.

[4] Knauber acknowledged that in the event of his death his interest in the joint property would pass to his son.

[5] See, also, the affidavit of John Elsen, attached to Knauber's memorandum in opposition to the appellees' motion for summary judgment.

queath my interest in the same to William Thomas Knauber.

"In all other respects I hereby ratify and confirm my said Last Will and Testament dated January 14, 1982.

"IN WITNESS WHEREOF, I have hereto set my hand this Nineteenth day of February, 1983."

While Hoy acknowledged that he advised Thaler to take the investment property as a tenant in common with Knauber, he denied that Thaler ever advised him of Thaler's intention to enter into a partnership with Knauber. Hoy further denied that he or Smith & Schnacke ever performed legal services for Knauber.

The record reveals that prior to February 14, 1983, Knauber and Thaler contacted attorney David Eyrich (Eyrich) concerning the forming of the partnership. Eyrich prepared several drafts of the partnership agreement before it was finally executed by Thaler and Knauber in March 1983. However, that document was backdated to January 26, 1983.

In July 1983 Theresa Thaler died.[6] Thereafter Thyra McClain (McClain) was appointed executrix of Thaler's estate pursuant to Thaler's will. By a letter dated August 17, 1983, McClain advised Knauber that, as successor to Thaler as a partner in the partnership, McClain was electing to withdraw as a partner and demanded that the partnership be dissolved. Following McClain's election Knauber filed a complaint for declaratory judgment in the Hamilton County Probate Court on October 31, 1983. In his complaint, Knauber demanded, *inter alia*, that the probate court declare that Thaler died seized of the investment real estate as a co-tenant with Knauber. Knauber further sought a declaration from the probate court that Thaler and Knauber were joint owners of the investment bank accounts at the time of Thaler's death.

In its opinion, the probate court determined that Thaler intended Knauber to receive the investment property and ruled that the property passed to Knauber under the codicil to Thaler's will. The court also held that the real property should pass to Knauber subject to the outstanding mortgage. This court reversed the probate court's judgment in *Knauber* v. *Masonic Home* (Nov. 6, 1985), Hamilton App. Nos. C-840554, C-840592 and C-840694, unreported.[7] In that decision, we held that the probate court erred in holding that the investment property vested in Knauber pursuant to the codicil to Thaler's will because the partnership agreement was executed subsequent to the execution of the codicil. As such, Thaler could not have intended to provide in her will for a method of settlement and distribution of her interest in the partnership other than as provided by statute.[8]

---

[6] The record describes Thaler's death as a suicide.

[7] A motion to certify to the Ohio Supreme Court was overruled by entry dated January 29, 1986 (case No. 85-1948).

[8] See R.C. 1779.01 to 1779.07, which provide a method for settlement of a deceased's partnership interest. See, also, R.C. 1779.08, which states:

"When the original article of a partnership in force at the death of a partner, or the will of a deceased partner, dispenses with an inventory and appraisement of the partnership assets and with a sale of the deceased partner's interest therein, and provides for a different mode for the settlement of such interest and for a disposition thereof different from that provided for in sections 1779.04 to 1779.06, inclusive, of the Revised Code, such interest shall be settled and disposed of in accordance with such articles or will."

After our disposition in *Knauber* v. *Masonic Home, supra,* Knauber filed a complaint in the court of common pleas on January 17, 1986, in which he alleged, *inter alia,* that Knauber was a third-party beneficiary to the contract between Thaler and the instant appellees to prepare the codicil *sub judice,* and that the appellees negligently breached said contract by failing to prepare a codicil to Thaler's will that would effectively cause the investment property to vest in Knauber. It was Knauber's position that Thaler had advised the appellees of her intention to enter into the partnership with Knauber prior to the execution of the codicil.

Following the filing of the appellee's answer and a period of discovery, the appellees filed their motion for summary judgment with supporting evidentiary material on July 11, 1986. On August 12, 1986, Knauber filed his memorandum in opposition thereto with supporting evidentiary documents.[9]

As noted above, the trial court granted the appellees' motion for summary judgment on December 22, 1986; in the written opinion that was placed of record before the entry was journalized, the court stated in part:

"If the partnership agreement defeated the codicil, then it must be assumed that such was the intent of both Thaler and Knauber who voluntarily entered into such agreement, upon advice of counsel, *after* the codicil, known to both them, had been written and executed. If Knauber misunderstood the effect of the partnership agreement, that is not the fault of Hoy, who (1) never met Knauber, (2) never represented Knauber, (3) who did not know the terms of the partnership, (4) who wasn't consulted about the partnership, (5) who was succeeded by another attorney who prepared the partnership agreement and had the duty to explain its effect."

From the judgment of the court below Knauber brings this timely appeal in which he maintains, in a solitary assignment of error, that the trial court erred in granting the appellees' motion for summary judgment.[10] The appellees have not appealed the trial court's judgment. However, in their brief, the appellees advance three assignments of error pursuant to R.C. 2505.22, which provides:

"In connection with an appeal of a final order, judgment or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part. The time within which assignments of error by the appellee may be filed shall be fixed by rule of court."

The purpose of the appellees' assignments of error is to preserve the judgment of the trial court if this court should find that the appellant's assignment of error has merit. See *Morgan* v. *Cincinnati* (1986), 25 Ohio St. 3d 285, 25 OBR 337, 496 N.E. 2d 468; *Duracote Corp.* v. *Goodyear Tire & Rubber Co.* (1983), 2 Ohio St. 3d 160, 2 OBR 704, 443 N.E. 2d 184. In this appeal, however, we do not reach the specific issues posed under the appellant's assignment of error, nor do we pass directly upon the merits of any of the appellees' assignments. We determine

---

[9] Thereafter each party filed a reply memorandum.

[10] The appellant argues that whether Hoy knew that he and Thaler intended to enter into a partnership agreement is a genuine issue of material fact that remains in dispute and renders improper the court's granting of the appellees' motion for summary judgment.

instead, on the state of this record, that the trial court did not err, as the appellant asserts, by entering summary judgment for the appellees, and we affirm that judgment, for a reason that is advanced in one of the appellees' assignments: that summary judgment was appropriate because appellant's claim was time-barred under R.C. 2305.11.

R.C. 2305.11 provides that an individual must file a legal malpractice action within one year of the date that the action accrues. The action accrues and the statute of limitations begins to run when a client discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury. *Skidmore & Hall* v. *Rottman* (1983), 5 Ohio St. 3d 210, 5 OBR 453, 450 N.E. 2d 684, syllabus. We recognize that throughout this proceeding the appellant has maintained that this is a contract action and not a malpractice action. However, Ohio does not recognize a distinct contract action against attorneys who have negligently performed the services for which they were hired. Any action that may have existed in this case sounded in malpractice and not in contract. See *Nwabara* v. *Schoby* (Nov. 13, 1986), Cuyahoga App. No. 51211, unreported; *Stoll* v. *Kennedy* (1987), 38 Ohio App. 3d 102, 526 N.E. 2d 821. As discussed above, Knauber's complaint against the instant appellees was filed on January 17, 1986. However, the record discloses that Knauber had notice that the partnership agreement could defeat Thaler's bequest to him at least as early as August 17, 1983. See letter of August 17, 1983, from McClain, executrix of Thaler's estate, to Knauber, *supra.* In-

deed, the final paragraph of Knauber's complaint prays for judgment, costs and interest from July 10, 1983, the date of Thaler's death.

Knauber's declaratory judgment action in the probate court did not toll the time for bringing a malpractice action against the instant appellees. While we find no Ohio authority for this proposition, we are persuaded by the reasoning of the court in *United States* v. *Gutterman* (C.A. 9, 1983), 701 F.2d 104. In that case, the executor of the estate of his deceased father employed a law firm for legal services pertaining to the disposition of the estate. The firm filed the estate tax return on January 25, 1972, approximately six months late. On March 6, 1972, the Internal Revenue Service assessed a substantial penalty against the estate. The executor was notified of the delinquency on August 14, 1972, but did not pay the penalty. In March 1978, the United States brought suit to collect the unpaid penalty and judgments were secured against both the estate and the executor personally. On September 19, 1979, the executor filed a third-party complaint against the law firm in which he alleged legal malpractice for the late filing. The firm moved for summary judgment on the ground that the third-party action was barred by the statute of limitations. The district court held that the executor's action did not accrue until the United States had secured judgment on the tax penalty and granted judgment in favor of the executor.[11] On appeal, the Ninth Circuit Court of Appeals reversed. The appellate court reasoned that:

"* * * [W]e have not found, nor have the parties cited, any case holding

---

[11] At the time of the proceedings in *United States* v. *Gutterman, supra,* a California case, California law provided that a malpractice action did not accrue until the client discovered or should have dis-

covered the facts establishing the elements of his cause of action, and there was appreciable and actual harm from the attorney's negligent conduct. *Gutterman, supra,* at 105.

that a malpractice claim for negligent tax services does not accrue until a court judgment. Nor does it make policy sense to follow such a rule. It would allow clients such as * * * [the executor] to keep attorneys unsure of their legal exposure for years, despite the client's full knowledge of the nature of their attorneys' acts as well as the damage caused thereby. This runs directly counter to the legitimate interest in enforcing a statute of limitation." *United States* v. *Gutterman, supra,* at 107.

We therefore hold that Knauber's action against the appellees is time-barred by R.C. 2305.11. Accordingly, we must conclude that the trial court did not err by entering summary judgment in favor of the appellees, even though we have not addressed the specific contentions advanced under the appellant's assignment of error. It is unnecessary to resolve those claims on the merits because the trial court's judgment remains valid on the independent legal grounds provided under R.C. 2505.22.

The judgment of court below is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., and SHANNON, J., concur.